Donald WILT, Respondent,

v.

KANSAS CITY AREA TRANSPORTATION AUTHORITY, Appellant.

No. 32524.

Missouri Court of Appeals,
Western District.

Feb. 23, 1982.

Max W. Foust and G. Spencer Miller, Kansas City, for appellant.

Aaron A. Wilson, City Atty., and Michael W. Bradley, Asst. City Atty., Kansas City, for respondent.

Before SOMERVILLE, C. J., Presiding, and WASSERSTROM and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This is an appeal from the trial court's grant of defendant-respondent Kansas City Area Transportation Authority's (KCATA) Motion to Dismiss Count II of plaintiff-appellant Donald Wilt's two count petition for property damage and damages for emotional distress.

The judgment of the trial court is affirmed.

On February 15, 1978, Wilt's aunt, Eva Wilt, was driving his 1971 Buick auto near 7702 Wornall Road in Kansas City, Missouri when a KCATA bus struck the Buick from behind. Wilt filed a petition in two counts. Count I sought $5,000.00 for property damage to and loss of use of the Buick. Count II sought $25,000.00 damages for emotional distress allegedly suffered due to KCATA's extreme and outrageous conduct of refusing to settle Wilt's property damage claim until Eva Wilt's claim for personal injuries was settled. The second count sought an additional $250,000.00 in punitive damages for KCATA's alleged conscious disregard for the rights of Wilt.

On April 11, 1980, KCATA filed a Motion to Dismiss Count II of Wilt's petition for failure to state a claim. On December 8, 1980, the trial court severed Counts I and II of Wilt's petition for trial, as it did not wish to have evidence of a compromise (facts necessary for the trial of Count II) admitted in a trial for property damage or personal injuries.[1] The jury returned a verdict in Wilt's favor for $1,000.00 on his Count I. On January 23, 1981, the trial court sustained KCATA's Motion to Dismiss Count II.

Wilt's sole point on appeal is that the trial court erred in sustaining KCATA's Motion to Dismiss Count II because his petition "states a cause of action for either the tort of outrageous conduct, or intentional infliction of emotional distress, or 'prima facie tort.'"

The issue on this appeal is whether KCATA's conduct in "denying a claim to appellant which everyone agreed was owed [the property damage claim] for the purpose of coercing appellant's aunt to settle her personal injury claim" is actionable under the theories of intentional infliction of emotional distress or prima facie tort. In deciding this issue, Wilt's petition must be given its

---

1. Eva Wilt's claim for personal injuries was tried together with Donald Wilt's property damage claim. The jury awarded Ms. Wilt $5,000.00 damages.

broadest intendment, all facts pled shall be treated as true, and all allegations must be construed in Wilt's favor. *Shapiro v. Columbia Union National Bank and Trust Co.*, 576 S.W.2d 310, 312[1] (Mo.banc 1978).

Except for the above-quoted explanation of the basis for Wilt's cause of action, Wilt's two page Argument does no more than state the elements for a cause of action under intentional infliction of emotional distress and prima facie tort and then state in wholly conclusory fashion that his petition touched upon all those elements. In a word, Wilt's argument is not convincing.

## I.

■ "Missouri does recognize a cause of action for outrageous conduct as defined by Section 46 of the Restatement (Second) of Torts." *Leonard v. Pioneer Finance Co.*, 568 S.W.2d 937, 940 (Mo.App.1978). Missouri adopted the position of the Restatement in *Pretsky v. Southwestern Bell Telephone Co.*, 396 S.W.2d 566 (Mo.1965), where the court held that one is liable for intentionally or recklessly causing severe emotional distress if it is done "by extreme and outrageous conduct." In *Pretsky*, the court cited to Comment (d) to Section 46, which states that:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "outrageous!".

Comment (h) to Section 46 further provides that "[i]t is for the court to determine, in the first instance, whether the defendants conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . . ."

In *Watson v. Franklin Finance*, 540 S.W.2d 186 (Mo.App.1976), this court reversed the lower court's dismissal of a petition for damages for intentional infliction of emotional distress and emphasized that under today's rules on pleadings, the allegations in the petition need only "invoke substantive principles of law which if proved may entitle the pleader to relief . . . ." *Id.* at 188 (citation omitted). In *Watson*, however, the petition alleged in part that the defendant finance company "repeatedly wrote, phoned and visited the plaintiff and falsely threatened to have plaintiff's home seized and sold, well knowing that they did not have a judgment on which execution or foreclosure could issue . . . for the purpose of harassing, intimidating and embarrassing plaintiff."

In the instant case, Wilt's petition alleged only that defendant knew "plaintiff was willing to accept an amount between $900.00 and $1,000.00 . . . [but] wrongfully refused to pay plaintiff for the damage to his automobile, and such action by defendant was designed to coerce plaintiff's aunt to accept an amount for her personal injuries which was less than which she was entitled." Apparently, the harm suffered by Wilt is that he was then forced to bear the expense and trouble of going to trial on a claim that he alleges is undisputed.

■ Even under the most liberal reading of this petition in light of the facts here, defendant's conduct here cannot be said to be "extreme and outrageous". Respondent correctly points out that the legal obligation of KCATA to pay for Wilt's property damage did not arise until the jury returned its verdict against them. Thus, simply because Wilt was "willing to accept" $1,000.00, did not mean KCATA was obligated to pay him. Even though efforts to compromise are favored by law, *Vinyard v. Herman*, 578 S.W.2d 938, 941 (Mo.App.1979), there is no compulsion under the law to do so.

■ Assuming Wilt's allegation that his case was used as "leverage" by the KCATA to settle the aunt's case is correct, this court, while not giving any stamp of approval to such settlement tactics, does not find them to be "extreme" or "outrageous". Looking at the evidence in a light most favorable to Wilt, it cannot be said that the

conduct of KCATA went "beyond all possible bounds of decency." Nor could it be regarded as "atrocious and utterly intolerable in a civilized community." *See United Telephone Company of Missouri v. Horn*, 610 S.W.2d 701, 704 [2–4] (Mo.App.1980).

## II.

The doctrine of prima facie tort was recently adopted in Missouri in *Porter v. Crawford & Company*, 611 S.W.2d 265 (Mo. App.1980), pursuant to the guidelines of § 870, Restatement (Second) of Torts. In *Porter*, this court summarized the elements of the cause of action as follows:

(1) An intentional lawful act by the defendant;

(2) An intent to cause injury to the plaintiff;

(3) Injury to the plaintiff, and

(4) An absence of any justification or an insufficient justification for the defendant's act.

It is in light of the *Porter* decision that this court must read Wilt's petition to determine (1) if the requisite elements have been pleaded; and (2) that none of the restrictions upon the doctrine are applicable here. In addition to setting out the elements of a prima facie tort action, the decision in *Porter* noted that several limitations under the early law (as adopted in New York) have been either eliminated or made less restrictive. First, the idea that the prima facie tort doctrine would not lie if a traditional nominative tort were available "has been largely dispelled by the analysis which suggests that under modern pleading, alternative and even contradictory theories may be pleaded." *Id.* at 270. Second, the court reasoned that "the stricture upon the doctrine of the New York case law requiring pleading and proof of pecuniary loss is not analytically sound," and that if there were special damages alleged, the pleading need only "set forth the factual matters that give reasonable notice of the nature and extent of the claim." *Id.* at 271. *See also* Comment (m) to Section 870, Restatement (Second) of Torts. Third, the court said that an early restriction that

malice be the sole motivation for the defendant's acts had been disregarded in recent years by the Restatement's position in § 870, which the court summarized as favoring a "balancing of interests" approach, where the plaintiff must plead and prove the defendant acted with a bad motive, and the defendant may then plead and prove any justification he may have for his actions.

■ In the case at bar, Wilt's petition made no mention of prima facie tort nor was there any direct allusion to several of the four required elements of that cause of action. First, Wilt did not plead nor can it be inferred from his petition that KCATA "intended to injure" Donald Wilt. As the court noted in *Porter*, it is the intent to *injure* and not merely the intent to *act* that must be pleaded and proven. 611 S.W.2d at 272. *See also Ruza v. Ruza*, 286 App.Div. 767, 1 A.2d 669, 146 N.Y.S.2d 808, 811 (1955); Restatement (Second) of Torts, § 870 Comment (b). The most that can be gleaned from Wilt's petition is that KCATA may have intended to cause injury to *Eva Wilt*, and only as a consequence could Donald Wilt have suffered emotional distress. This in no way supports Wilt's claims in his brief that KCATA intended to injure *him*. Finally, although Wilt claims in his brief that KCATA intended to deny him "an amount of money to which he was entitled," and therein "intended to injure" him, there was no mention of this in Count II of his petition. In any case, Wilt was not "entitled" to any amount of money merely upon filing a petition.

■ Second, the petition never alludes to "an absence of justification" on the part of KCATA. It was necessary for Wilt's petition to allege facts which could reasonably infer the presence of the essential elements of his cause of action. Similar to the tort of wrongful interference with a contract, the burden is on the plaintiff to affirmatively plead and prove an absence of justification on the part of the defendant. *Cady v. Hartford Accident and Indemnity Co.*, 439 S.W.2d 483, 485 [3] (Mo.1969). Accord-

ing the most liberal construction to Wilt's petition, Count II failed entirely to aver facts from which this final element of a prima facie tort action can be found. In any case, KCATA was justified in refusing to settle Wilt's claim, as it had the constitutional right to a trial by jury on that claim. It is clear that the theory of prima facie tort has been an afterthought, not contemplated when Wilt filed his petition.

 For these reasons, it is clear that Count II of Wilt's petition fails to state a claim upon which relief can be granted for either intentional infliction of emotional distress or prima facie tort.

Therefore, the judgment of the trial court is affirmed.