Angela M. EWING–CAGE and Herman Cage, Respondents,

v.

**QUALITY PRODUCTIONS, INC., Appellant.**

No. WD 57293.

Missouri Court of Appeals, Western District.

May 23, 2000.

Rhonda S. Loeppke, Independence, for Appellant.

Angela M. Ewing-Cage, pro se.

Before JOSEPH M. ELLIS, P.J., PAUL M. SPINDEN and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Quality Productions, Inc., the employer of Manuel Bribiesca at the time of a vehicular accident between Manuel Bribiesca and Angela Ewing–Cage, appeals from a judgment for $3,000.00 entered against it and in favor of Angela Ewing–Cage and her husband, Herman Cage, by the Circuit Court of Jackson County. Quality Productions, Inc. filed a Motion to Reconsider the Judgment, but the trial court denied it.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 13, 1997, Mrs. Ewing–Cage and Manuel Bribiesca were involved in an automobile accident. Mrs. Ewing–Cage was driving a car owned by her and Mr. Cage. Mr. Bribiesca, a Quality employee, was driving the only company-owned vehicle. Mrs. Ewing–Cage subsequently filed a petition in small claims court seeking $3,000.00 in property damages from Quality. Mr. Bribiesca was dismissed from the suit prior to trial because service of process was not obtained upon him. After a trial, on July 20, 1998, the Associate Circuit Court of Jackson County rendered a judgment for $3,000.00 in favor of the Cages.

On July 23, 1998, Quality filed an application for trial *de novo*. The case was tried again on May 3, 1999, before the Circuit Court of Jackson County, the Honorable Justine E. Del Muro, presiding. At trial, both Mr. and Mrs. Cage testified in their own behalf in addition to cross-examining Quality's one witness. Mrs. Ewing–Cage testified about the sequence of events leading to the collision, presented pictures of the damage done to their car and testified that the car "was a total loss," and that she had been without a vehicle since the date of the accident. Mr. Cage testified that in speaking to Mr. Garcia, a man whom he knew to be the owner of both Quality Productions, Inc. and the vehicle driven by Mr. Bribiesca, Mr. Garcia "displayed to [him] no concern, no remorse, no anything." Later in their case-in-chief, Mrs. Ewing–Cage testified in part,

> They know that *their driver* didn't have a license, you know. And if he's not responsible, I feel like somebody should be responsible if it was *their vehicle.*

Quality presented one witness, Edward Hall, a Quality plant manager. Mr. Hall testified that Mr. Bribiesca worked for Quality as a "utility person" who "cleaned up and went and got products and stuff" on the company's behalf. Mr. Hall testified that in the past, Mr. Bribiesca had driven the company vehicle "off and on," but that Mr. Bribiesca had to ask for permission, and Mr. Hall "would give him direct orders on what to go and get and when to go and get it." However, Mr. Hall testified that at the time of the accident, Mr. Bribiesca was not permitted to drive the Quality-owned vehicle, because "three weeks earlier, he didn't have a license . . . ." Mr. Hall testified that when the accident occurred, Mr. Bribiesca was using the company vehicle to go to lunch with his girlfriend. He said that the crashed vehicle was the only vehicle that the company owned. Finally, Mr. Hall testified that Mr. Bribiesca was no longer employed by Quality because he had been fired "partly because of this accident and partly because of his attitude."

On May 4, 1999, the trial court rendered a judgment for $3,000.00 in favor of Mr. and Mrs. Cage. On May 13, 1999, Quality filed a motion to reconsider. The motion was denied, and this appeal followed.

## II. STANDARD OF REVIEW

The standard of review in a court-tried case is guided by the principles enunciated in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32. We review the evidence in the light most favorable to the prevailing party, giving that party the ben-

efit of all reasonable inferences and disregarding contrary evidence and inferences. *Bach v. McGrath*, 982 S.W.2d 734, 735 (Mo.App. E.D.1998).

### III. LEGAL ANALYSIS

The issue of whether Manuel Bribiesca's negligence caused the accident is not in dispute. Nor is it disputed that Quality owned the vehicle driven by Mr. Bribiesca or that Mr. Bribiesca was a Quality employee at the time in question. However, Quality argues that it should not be held liable for Mr. Bribiesca's conduct under a respondeat superior theory of employer liability. Quality argues that Mr. Bribiesca was using its vehicle without its express or implied permission at the time of the accident. Quality also argues that Mr. Bribiesca's use of the vehicle at the time was for wholly personal reasons and was not in the course and scope of his employment with Quality.

■ Under the doctrine of respondeat superior, an employer may be held liable to a third party for a tort committed by its employee if the employee committed the tort while engaged in activities within the scope of his or her employment. *Davis–Bey v. Missouri Dept. of Correction*, 944 S.W.2d 294, 298 (Mo.App. W.D.1997). The plaintiff has the burden of proving that an employee's tortious conduct was within the course and scope of his or her employment. *Galemore Motor Co., Inc. v. State Farm Mut. Ins. Co.*, 513 S.W.2d 161, 168 (Mo.App. S.D.1974). In determining whether an act was committed within the scope of one's employment, we look not at the time or motive of the conduct, but rather at whether the act was done by virtue of the employment and in furtherance of the business or interest of the employer. *P.S. and R.S. v. Psychiatric Coverage, Ltd.*, 887 S.W.2d 622, 624 (Mo. App. E.D.1994). If the act is naturally incident to the employer's business and did not arise wholly from some external, independent or personal motive, it is done while engaged in the employer's business.

*Id.* However, in situations where a tort is committed through the use of a vehicle, "[t]here is a presumption that the employee was acting within the scope of his employment whenever the vehicle is owned by the employer and driven by the employee." *McCoy v. Hershey Chocolate Co.*, 655 S.W.2d 128, 131 (Mo.App. E.D.1983) (citing, *Stone v. Reed*, 247 S.W.2d 325, 330 (Mo.App.1952)). This presumption disappears only when the defendant introduces substantial controverting evidence. *Johnson v. Bi–State Development Agency*, 793 S.W.2d 864, 868 (Mo. banc 1990).

■ In the case at bar, the parties agree that at the time of the accident, Mr. Bribiesca was employed by Quality, and he was driving a vehicle owned by Quality. Therefore, the presumption that Mr. Bribiesca was acting within the scope of his employment arose. That presumption could be eliminated only upon Quality presenting substantial evidence dispelling the notion that Mr. Bribiesca's use of the vehicle at the time was for the purpose of furthering Quality's business interests in some fashion. *Id.; P.S. and R.S.*, 887 S.W.2d at 622. Quality contends it presented such evidence.

■ Quality's witness, Edward Hall, testified that at the time, (1) Quality owned one company vehicle; (2) Mr. Bribiesca was forbidden from driving the vehicle, because he did not have a valid driver's license, and he was only allowed to ride in it if another Quality employee drove; (3) Mr. Bribiesca had surreptitiously taken the keys to the company vehicle out of Mr. Hall's desk drawer, unbeknownst to anyone; and (4) Mr. Bribiesca's purpose for using the vehicle was merely to take his girlfriend to lunch. We are mindful of the general rule that the master–servant relationship is suspended while the servant is going to and from meals, even though he is driving the master's car, unless the master receives some direct benefit from the servant's use of the master's car. *McCoy*, 655 S.W.2d at 131.

With Quality's evidence, the presumption disappeared, but the result would be the same, because the trier of fact can look at all of the evidence and the reasonable inferences from the evidence. Clearly, in this case, there was sufficient evidence to justify the trial court's decision. The record as a whole supports a finding that Mr. Bribiesca was indeed acting within the scope of his employment at the time of the accident. The testimony of the Cages showed the relationship between Mr. Bribiesca and Quality. Mr. Hall, the Quality representative, acknowledged that Mr. Bribiesca was a Quality employee at that time. Mr. Hall also testified that Mr. Bribiesca had been permitted to use the vehicle for company purposes in the past. Given that Mr. Bribiesca's employment was terminated "partly because of [the] accident" and, for some reason, was not available for trial, one could reasonably infer that, contrary to Mr. Hall's assertions, Mr. Bribiesca was using the company car for company purposes at the time in question. One could also conclude that it was unlikely that Mr. Bribiesca would use the only company vehicle to go to lunch if he was prohibited from driving it. More importantly though, the trial court in its discretion, weighed all of this evidence and the reasonable inferences, ascertained the credibility of the parties, and decided for the Cages.

The judgment of the trial court is affirmed.

ELLIS and SPINDEN, JJ., concur.